IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Islam Dunn, | ) Civil Action No.:2:14-02277-RMG-MGB |
| Petitioner, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| | ) **OF MAGISTRATE JUDGE** |
| Warden Michael Bush, | ) |
| Respondent. | ) |

The Petitioner, a state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment. (Dkt. No. 22; see also Dkt. No. 21.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

The Petitioner brought this habeas action on or about June 5, 2014. (Dkt. No. 1.) On October 20, 2014, Respondent filed a Motion for Summary Judgment. (Dkt. No. 22; see also Dkt. No. 21.) By order filed October 21, 2014, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 23.) Petitioner filed a Response in Opposition to the Motion for Summary Judgment on or about November 5, 2014. (Dkt. No. 25.)

## PROCEDURAL HISTORY

The Petitioner is currently confined at Lee Correctional Institution of the South Carolina Department of Corrections ("SCDC"). In November of 2009, the Aiken County Grand Jury indicted Petitioner for murder and attempted armed robbery. (R. at 92-97.) Petitioner was represented by Aaron G. Walsh, Esquire. (See R. at 1.) On September 16,

2010, Petitioner pled guilty to voluntary manslaughter and attempted armed robbery before the Honorable Doyet A. Early, III. (See R. at 1-16.) Petitioner was sentenced to twenty years, concurrent, on each conviction on September 20, 2010. (R. at 17-36.)

Petitioner, through attorney Walsh, filed a Notice of Appeal. (Dkt. No. 21-1.) Mr. Walsh filed a Rule 203(B) Explanation, wherein Mr. Walsh stated that although he "does not have a good faith basis to believe that any issues are properly before the Court of Appeals, and [he] did not object to the sentence or file a motion to reconsider the sentence," he filed the appeal at the request of Petitioner. (Dkt. No. 21-2.) In an Order filed October 26, 2010, the South Carolina Court of Appeals dismissed the appeal. (Dkt. No. 21-3.) The Court of Appeals issued the remittitur on November 12, 2010. (Dkt. No. 21-4.)

Petitioner filed an application for post-conviction relief ("PCR") on January 19, 2011. (R. at 39-45.) The following questions and answers appeared in his PCR application (verbatim):

> 10. State concisely the grounds on which you base your allegation that you are being held in custody unlawfully:
>
>    (a) I feel that I've been forced to take a plea
>
>    (b) I been verbally threaten in if I didn't take plea I would get life
>
> 11. State concisely and in the same order the facts which support each of the grounds set out in (10):
>
>    (a) My lawyer was working with the State
>
>    (b) The threat came from the judge

(R. at 41.)

On January 26, 2012, an evidentiary hearing was held before Judge Edgar W. Dickson. (R. at 51-84.) Petitioner was present and represented by Michael W. Chesser, Esquire. (See R. at 51.) In a written order dated May 22, 2012, Judge Dickson denied the application for post-conviction relief and dismissed the petition. (R. at 86-91.)

Petitioner, through his attorney Breen Richard Stevens, Esquire, of the South Carolina Commission on Indigent Defense, filed a <u>Johnson</u> Petition for Writ of Certiorari on February 15, 2013. (Dkt. No. 21-5.) [1] Through counsel, Petitioner raised the following issue:

> Whether Petitioner's guilty plea was knowingly, intelligently, and voluntarily made where Petitioner indicated he was threatened that he would get a life sentence if he went to trial, and where Counsel admitted to telling Petitioner he would likely receive a life sentence if he went to trial?

(Dkt. No. 21-5 at 3 of 13.) Mr. Stevens also filed a petition to be relieved as counsel. (Dkt. No. 21-5 at 12 of 13.) Petitioner filed a *pro se* response to the <u>Johnson</u> petition, wherein he raised the following issues:

> 1. Issue: forced guilty plea. Re: forced to plead guilty by atty: atty allowed solicitor to use an intimidation tool on his client in pressuring him to plead guilty.
>
> 2. Issue: judicial misconduct, judge make threatening remarks to applicant when expressing a desire to exercise his rights guaranteed by the constitution for trial judge then make it known that a harsh sentence would be imposed if applicant did not plead guilty.
>
> [3.] Ineffective assistance of appellate counsel by trial see rules 208 SCACR, 207 SCACR, 203 SCACR.

(Dkt. No. 21-6.) In an order filed January 23, 2014, the South Carolina Court of Appeals denied the petition and granted counsel's request to withdraw. (Dkt. No. 21-7.) The matter was remitted to the lower court on February 11, 2014. (Dkt. No. 21-8.)

Petitioner then filed the instant habeas petition, wherein he raised the following grounds for review (verbatim):

> **Ground One**: Petitioner's fifth, sixth, and fourteenth U.S. Constitutional Amendments were violated due to an involuntary plea.
> **Supporting Facts**: My plea counsel allowed the solicitor to use an intimidation tactic into pressuring me to plead guilty by persuading my dad (co-defendant) to coerce me to plead guilty against my will.

---

[1] <u>See Johnson v. State</u>, 294 S.C. 310, 364 S.E.2d 201 (1988).

3

> **Ground Two:** Petitioner's fifth, sixth, and fourteenth U.S. Constitutional Amendments were violated due to trial counsel's failure to object to judicial misconduct.
> **Supporting Facts**: Plea judge made threatening remark about me to my plea counsel when I expressed a desire to proceed with trial. Judge then made it known that a harsh sentence would be imposed if I did not plead guilty. Judge told my lawyer that if I accepted the plea deal I was gonna receive no less than 15 years and no more than 25 years. However, if I elected to proceed with trial and lose, then I wouldn't see daylight again.
>
> **Ground Three**: Petitioner's fifth, sixth, and fourteenth U.S. Constitutional Amendments were violated due to Ineffective Assistance of Appellate Counsel.
> **Supporting Facts**: My appellant counsel did not file a required explanation to the appellant court when he filed the notice of intent to appeal. This brief should have been filed explaining how issue was preserved by the trial transcript record.

(Dkt. No. 1 at 6-10 of 15; Dkt. No. 1-1 at 2 of 2.)

## **APPLICABLE LAW**

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

**Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320, 322-23 (1997); Breard v. Pruett, 134 F.3d 615, 618 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

## DISCUSSION

As noted above, Respondent seeks summary judgment in the instant case. (See Dkt. No. 22; see also Dkt. No. 21.) For the reasons set forth herein, the undersigned recommends granting Respondent's Motion for Summary Judgment (Dkt. No. 22).

**I.     Ground One**

In Ground One, Petitioner asserts his guilty plea was involuntary; he complains that his plea counsel "allowed the solicitor to use an intimidation tactic into pressuring [him] to

plead guilty by persuading [his] dad (co-defendant) to coerce [him] to plead guilty against [his] will." (Dkt. No. 1.) Respondent contends that this claim "was not specifically raised during the PCR proceeding by any evidence," and "it was not presented in any Rule 59 motion." (Dkt. No. 21 at 21.) Respondent asserts the claim is procedurally barred and, in any event, that the claim lacks merit. (Id.)

The PCR court did address Petitioner's claim of an involuntary guilty plea; the court did not, however, address the specific claim that his guilty plea was involuntary because plea counsel "allowed the solicitor to use an intimidation tactic" to pressure Petitioner to plead guilty by "persuading [his] dad [codefendant] to coerce [him] to plead guilty against [his] will." (See R. at 86-91.) In addition, the undersigned reviewed the transcript of the PCR hearing and found no allegation that the solicitor "use[d] an intimidation tactic into pressuring [Petitioner] to plead guilty by persuading [his] dad (co-defendant) to coerce [Petitioner] to plead guilty against [his] will." The claim of an involuntary guilty plea–in the specificity set forth in Ground One of his § 2254 petition–is therefore procedurally barred. See Matthews v. Evatt, 105 F.3d 907, 911-17 (4th Cir. 1997), abrogated on other grounds by Miller-El v. Dretke, 545 U.S. 231 (2005); see also Longworth v. Ozmint, 377 F.3d 437, 448 (4th Cir. 2004); Thomas v. Gibson, 218 F.3d 1213, 1220-21 (10th Cir. 2000) (concluding petitioner defaulted on claim that counsel was ineffective for "failing to develop evidence that Kenneth Powell was the likely murderer or in failing to present that evidence to the jury at trial" where the petitioner failed "to adequately present the basis of this claim" in the state courts, even though the petitioner asserted "a generalized claim that his trial counsel had not adequately

prepared for trial").[2] The undersigned recommends granting Respondent's Motion for Summary Judgment as to Ground One.

## II.     **Ground Two**

Petitioner asserts in Ground Two that his guilty plea was involuntary "due to trial counsel's failure to object to judicial misconduct." Petitioner contends the trial judge told his lawyer that if he accepted the plea, he would receive "no less than 15 years and no more than 25 years," but if Petitioner proceeded to trial and lost, Petitioner "wouldn't see daylight again."

The United States Supreme Court has said that a meritorious ineffective assistance of counsel claim must show two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-96 (1984). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance.   Id. at 689.   "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks and citation omitted); see also Bowie v. Branker, 512 F.3d 112, 119 n.8 (4th Cir. 2008); Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297–99 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1467

---

[2]Procedural default may be excused if the Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Martinez v. Ryan, 132 S. Ct. 1309, 1315 (2012). In the alternative for showing cause and prejudice, a petitioner may attempt to demonstrate a miscarriage of justice, e.g., actual innocence, Bousley v. United States, 523 U.S. 614, 623 (1998); see also Schlup v. Delo, 513 U.S. 298, 327 (1995), or abandonment by counsel. Maples v. Thomas, 132 S. Ct. 912, 924 (2012) (inquiring "whether [the petitioner] ha[d] shown that his attorneys of record abandoned him, thereby supplying the extraordinary circumstances beyond his control, necessary to lift the state procedural bar to his federal petition" (internal quotation marks and citations omitted)). Petitioner has not made any showing sufficient to overcome the procedural bar.

(4th Cir. 1985). In order to establish the second prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." Id. While Strickland itself is a deferential standard, when both § 2254(d) and Strickland apply, "review is doubly" deferential. Harrington v. Richter, 131 S.Ct. 770, 788 (2011). Indeed, when § 2254(d) applies, "[t]he question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 131 S.Ct. at 788.

The two-part test enunciated in Strickland applies to challenges to guilty pleas based on ineffective assistance of counsel. See Hilll v. Lockhart, 474 U.S. 52, 58 (1985). "[I]n order to satisfy the 'prejudice' requirement [set forth in Strickland], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59.

In evaluating Petitioner's claim that his guilty plea was involuntary, the PCR court stated, *inter alia*,

> To find a guilty plea is voluntarily and knowingly entered into, the record must establish the applicant had a full understanding of the consequences of his plea and the charges against him. Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709 (1969); Dover v. State, 304 S.C. 433, 405 S.E.2d 391 (1991). In determining guilty plea issues, it is proper to consider the guilty plea transcript as well as evidence at the PCR hearing. Harris v. Leeke, 282 S.C. 131, 318 S.E.2d 360 (1984).
> An Applicant who enters a plea on the advice of counsel may only attack the voluntary and intelligent character of the plea by showing that trial counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that, but for trial counsel's errors, the defendant would not have pled guilty, but would have insisted on going to trial, Roscoe v. State, 345 S.C. 16, 546 S.E.2d 417 (2001); Richardson v. State, 310 S.C. 360, 426 S.E.2d 795 (1993). Given Applicant's burden of proof and the analysis to be applied to this claim, the Applicant's claim of involuntary

8

plea is, in essence, a claim of ineffective assistance of counsel, and it will be treated as such.

Applicant testified that Counsel informed him that he would receive life in prison if he went to trial. Applicant testified that his attorney spoke to the judge after telling him that he would receive life imprisonment. Applicant stated that he wanted a trial until Counsel told him about life imprisonment.

Counsel noted the facts of the case and that Applicant could receive life imprisonment if convicted of either Murder o[r] Burglary (First Degree). Given the evidence, Counsel felt that Applicant would most likely be convicted at trial. Based on his experience and the facts of the case, Counsel believed that a pronouncement of life imprisonment would be likely following a conviction at trial. Counsel stated that he would have advised Applicant of this no matter who the judge was. Counsel believed that Applicant would likely receive a sentence of fifteen (15) to twenty-five (25) years if he pled guilty. Under the circumstances, Counsel believed that it was indeed in Applicant's best interest to plead guilty.

The trial court informed Applicant of the potential sentences he faced. Tr. p. 7. The State's recommendation for concurrent sentences and agreement to nolle prosse other charges were also related during the plea colloquy. Tr. p. 3, p. 11. Applicant assured the plea judge that other than the State's recommendation and dropping the additional charges that no threats or promises had been made. Tr. pp. 11-12. Applicant expressed no issues several days later when he was sentenced.

I find that Counsel's performance was not unreasonable. Applicant may have feared a life sentence if convicted at trial, but he in fact faced such a sentence. Counsel would have been remiss not to inform him of the potential consequences. Applicant was under no peculiar pressure to plead guilty. For all these reasons, I find that Applicant has failed to carry his burden of proof.

(R. at 88-90.)

Petitioner has not shown that the state court's rejection of his claim of an involuntary guilty plea was contrary to, or an unreasonable application of, clearly established federal law as established by the Supreme Court, nor has Petitioner shown that the state court's rejection of his claim was based on an unreasonable determination of the facts. During the plea colloquy, Petitioner indicated he understood the attempted armed robbery charge carried a sentence of up to twenty years and that the voluntary manslaughter charge carried a minimum of two years and a maximum of thirty years. (R. at 7.) Petitioner indicated he understood that attempted armed robbery and voluntary manslaughter were both classified

as violent and as "most serious" offenses and the consequences of such classifications. (R. at 7-9.) When Judge Early asked Petitioner whether he understood he would have to give up his constitutional right to remain silent and his right to a jury trial in order to plead guilty, Petitioner stated that he understood. (R. at 9-11.) The following also occurred during Petitioner's plea colloquy:

> THE COURT: Other than the recommendation that the state has made to have these sentences–whatever I give you to run can [sic] together as opposed to one after the other and that's called concurrent as opposed to consecutive, has anyone promised you anything, held out any hope of reward, or threatened you in any manner in order to make you plead guilty?
>
> THE DEFENDANT: No, sir.
>
> MR. MILLER: Your honor, if I may for the clarity of the record, we have agreed to also dismiss any additional charges that he may be facing. There were some other indictments that have been true billed. Those will all be dismissed in exchange for these pleas.
>
> THE COURT: Do you understand that? I am not sure what all of the other indictments were, but whatever was outstanding as a result of this incident, I assume–
>
> MR. MILLER: Yes, sir. It just [sic] this incident.
>
> THE COURT: –will be nol prosed [sic]. They cannot be prosecuted. Do you understand that?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Other than the recommendation and the nol prosing [sic] of those indictments, has anybody promised you anything, held out any hope of reward, or threatened you in any manner in order to make you plead guilty?
>
> THE DEFENDANT: No, sir.
>
> . . .
>
> THE COURT: Are you entering this plea of guilty to the attempted armed robbery and the voluntary manslaughter of your own free will and accord?
>
> THE DEFENDANT: Yes, sir.

> THE COURT: No one is twisting your arm and making you do it?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: And I ask you, sir, did you in Aiken County on or about June 12 of last year 2009 participate in an attempt to arm–in an attempt to rob with a deadly weapon one Jerry Tyler and participate in activity which led to his death when he was shot?
>
> THE DEFENDANT: Yes, sir.
>
> . . .
>
> THE COURT: Pleading guilty because you are guilty?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Pleading guilty because you participated in the event which led to the death of the deceased Jerry Tyrone Tyler?
>
> THE DEFENDANT: Yes, sir.

(R. at 11-14.)

Petitioner testified at his PCR hearing that his attorney told him that if he went to trial and was convicted, Petitioner would likely receive a life sentence. (R. at 60-64.) According to Petitioner, the judge told Petitioner's counsel that Petitioner would likely receive a life sentence if he went to trial and was convicted, but if Petitioner pled guilty, his sentence would likely range between fifteen and twenty-five years. (R. at 63-64.) Plea counsel testified as follows:

> We went into chambers and certainly that range of 15 to 25–and each judge, of course, conducts their, you know, in-chambers conversations a little bit differently.
>     Judge Early certainly presents his as a probability. He would have informed us, you know, that he certainly hadn't heard the case, but based on the summary kind of presented and that, he would think that 15 to 25 would be his range on a guilty plea.
>     And to be honest, I believe his exact–and it's been sometime [sic]. I believe his exact reaction, I think when discussed, he said, you know, and Mr. Walsh certainly you realize these charges could carry life. And I believe he shrugged and made a non verbal indication as, you know, he certainly did not

11

> say to me, and I don't believe I said to Mr. Dunn, and recollections vary but since I don't think I would have said it, I'm pretty sure I didn't, I don't think that the communication was that the judge said he would definitely give you life, although that's my belief today.
>
> Judge Early's our administrative judge. Without a chambers conference, I think that after a trial on this case with these facts, despite his age after a trial, I believe, forget about any chamber's conversations, my belief is that that would be a life sentence after trial. It was then and is now.

(R. at 76-77.) Plea counsel testified that he did not recall saying that Petitioner would have "as a certainty" be sentenced to life; he testified, however, "I'm sure I indicated that he indicated there was a strong probability because that would have been true." (R. at 83.)

The PCR court found that Petitioner "may have feared a life sentence if convicted at trial, but he in fact faced such a sentence," and counsel "would have been remiss not to inform him of the potential consequences." (R. at 90.) The PCR court concluded that Petitioner "was under no peculiar pressure to plead guilty." (R. at 90.) Petitioner has not shown that the state court's rejection of his claim of an involuntary guilty plea was contrary to, or an unreasonable application of, clearly established federal law as established by the Supreme Court, nor has Petitioner shown that the state court's rejection of his claim was based on an unreasonable determination of the facts; he is not entitled to federal habeas relief. See Harrington v. Richter, 131 S. Ct. 770, 784-85 (2011); Brady v. United States, 397 U.S. 742, 751 (1970) ("[T]he defendant might never plead guilty absent the possibility or certainty that the plea will result in a lesser penalty than the sentence that could be imposed after a trial and a verdict of guilty. We decline to hold, however, that a guilty plea is compelled and invalid under the Fifth Amendment whenever motivated by the defendant's desire to accept the certainty or probability of a lesser penalty rather than face a wider range of possibilities extending from acquittal to conviction and a higher penalty authorized by law for the crime charged."); Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005) (quoting Brady, 397 U.S. at 748 ("A guilty plea . . . is valid only if done voluntarily, knowingly, and intelligently,

'with sufficient awareness of the relevant circumstances and likely consequences.'"); Edmonds v. Lewis, 546 F.2d 566, 568 (4th Cir. 1976); Galloway v. Howard, 624 F. Supp. 2d 1305, 1311-12 (W.D. Okla. 2008) (no federal habeas relief where trial judge told the petitioner, "So, of the options that you have, you know, you have an option to plead to the 25 or you have the option of going to trial. We've talked off the record that when the jury hears that you have eight felony priors it would be our belief and I say that with the attorneys standing here because we've all kind of talked about what we've experienced in jury trials, I think the jury will give you probably 50 or 60 years."); Tittle v. Sec'y of Dep't of Corrs., Civ. A. No. 8:10-cv-2489-T-27TBM, 2014 WL 712692, at *14-15 (M.D. Fla. Feb. 24, 2014) (rejecting habeas relief on a claim that trial counsel "was ineffective in forcing [him] to plead guilty" and that "counsel had told him that if he did not go back in [the courtroom] and tell the court that he understands everything, that he would go to prison for the rest of his life" where state court rejected the claim as refuted by the record); Carter v. Hobbs, Civ. A. No. 5:10CV00346 JMM/JTR, 2013 WL 1668988, at *5 (E.D. Ark. Mar. 25, 2013), adopted at 2013 WL 1663248 (E.D. Ark. Apr. 17, 2013) ("Petitioner's argument that his exposure to life sentences constituted unconstitutional 'coercion' to plead guilty runs counter to well-established case law."). Respondent is entitled to summary judgment on Ground Two.

### III. **Ground Three**

In Ground Three, Petitioner contends his appellate counsel was constitutionally ineffective. Petitioner states (verbatim),

> My appellant counsel did not file a required explanation to the appellant court when he filed the notice of intent to appeal. This brief should have been filed explaining how issue was preserved by the trial transcript record.

(Dkt. No. 1.)

Respondent contends this claim is procedurally barred because the claim was never presented to the state court. (Dkt. No. 21 at 22.) Respondent is correct. The claim was not

13

addressed in the PCR court's order; no Rule 59 motion was filed; and no evidence concerning appellate counsel was presented at the PCR hearing. Accordingly, the claim is procedurally barred. The undersigned recommends granting Respondent's Motion for Summary Judgment as to Ground Three.[3]

## CONCLUSION

It is RECOMMENDED, for the foregoing reasons, that Respondent's Motion for Summary Judgment (Dkt. No. 22) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. It is further RECOMMENDED that a certificate of appealability be denied.[4]

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

February 18, 2015
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[3] Additionally, although Petitioner contends appellate counsel was ineffective for failing to "file a required explanation to the appellant court when he filed the notice of intent to appeal," Petitioner has not specified–in this court or in state court–any particular issue he contends appellate counsel should have raised.

[4]     Title 28, Section 2253 provides in relevant part,
(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
(B) the final order in a proceeding under section 2255.
28 U.S.C. § 2253. A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 336 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683 (4th Cir. 2001). In the case *sub judice*, the legal standard for a certificate of appealability has not been met. The undersigned therefore recommends that a certificate of appealability be denied.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).